UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
PEGGY KANDE,                                    :

                        Plaintiff,              :

            -against-                           :        **MEMORANDUM AND ORDER**

COMMISSIONER OF SOCIAL SECURITY,  :                      19-CV-3578 (KNF)

                        Defendant.      :
-------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## INTRODUCTION

Peggy Kande ("Kande") commenced this action against the Commissioner of Social

Security (the "Commissioner"), seeking review of an administrative law judge's ("ALJ") April

25, 2018 decision, finding her ineligible for disability insurance benefits, pursuant to Title II of

the Social Security Act, 42 U.S.C. §§ 401-43.  Before the Court are the parties' motions for

judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## ALJ'S DECISION

The ALJ found that Kande: (1) meets the insured status requirements of the Social

Security Act through March 31, 2019; (2) has not engaged in substantial gainful activity since

June 6, 2014, the alleged disability onset date; (3) "has the following severe impairments:

degenerative disc disease of the cervical spine, lumbar spondylosis, degenerative joint disease of

the left shoulder, degenerative joint disease of the left hip, chronic obstructive pulmonary

disorder (COPD), obesity, major depressive disorder, anxiety disorder, and post-traumatic stress

disorder (PTSD)"; (4) does not have an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1; (5) has the residual functional capacity to perform light work,

1

except that she is limited to no more than occasionally reaching overhead bilaterally; no more than occasionally climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; no more than occasionally stooping, crouching, kneeling, or crawling; no frequent and rapid movement of the neck; jobs that do not require fine visual acuity; simple, routine tasks; and work in a low-stress job (defined as having only occasional decision-making and only occasional changes in the work setting); must avoid concentrated exposure to extreme heat, wetness or humidity, and irritants (such as fumes, odors, dust and gases, poorly-ventilated areas, and exposure to chemicals); and must be allowed off-task 5% of the day, in addition to regularly-scheduled breaks[;]

(6) is unable to perform any past relevant work; (7) was a younger individual age 18-49 on the alleged disability onset date and changed age category subsequently to closely approaching advanced age; and (8) has at least a high school education and is able to communicate in English. The ALJ found that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Kande is not disabled regardless of the transferable job skills. Considering Kande's age, education, work experience and residual functional capacity, jobs exists in significant numbers in the national economy that she can perform, such as hostess, usher and recreation aide. The ALJ concluded that Kande has not been under disability from June 6, 2014, through the date of the decision.

## PLAINTIFF'S CONTENTIONS

Kande asserts that: (1) the ALJ "failed to properly weigh the opinions of consulting examiner, Alexios Apazidis, M.D. ['Dr. Apazidis']; examiner, Steven C. Weinstein, M.D. ['Dr. Weinstein']; consulting examiner, Harry Goldmark, M.D. ['Dr. Goldmark']; treating chiropractor, Lucas Bottcher, D.C. ['Bottcher']; and consulting examiner, Cheryl Archbald, M.D. ['Dr. Archbald'] to craft" a residual functional capacity "for light work based on a single outlying opinion rendered by a non-examining physician"; and (2) the ALJ's residual functional capacity determination "is not supported by substantial evidence because she failed to properly weigh the opinion of consulting psychologist W. Amory Carr, Ph.D. ['Dr. Carr'] to craft" a

residual functional capacity "that provided for no social limitations."  Kande acknowledges that the ALJ rejected properly the opinions of several examiners that she "was either 100 percent disabled as a result of her impairments, or unable to return to work" because whether the claimant is disabled is a matter reserved for the Commissioner, but the ALJ "failed to properly consider the functional limitations contained in those opinions and weigh them in accordance with the regulations."

For example, Dr. Apazidis opined, after the February 27, 2014 consultative orthopedic examination, that Kande was capable of returning to work with a restriction: to "avoid lifting objects heavier than 15 pounds."  The ALJ rejected this opinion and failed to give more weight, as required by the regulations, to the opinion of examining source, Dr. Apazidis, rather than that of a non-examining state-agency consultant.  Furthermore, Dr. Apazidis's opinion was accompanied by an examination during which he observed moderate spasms of the cervical spine, moderate tenderness in the paraspinal and trapezius, decreased sensory response throughout all fingers of both hands, a positive Spurling's test and decreased range of motion throughout the cervical spine with disc herniation and radiculopathy.  Dr. Apazidis's opinion was consistent with and supported by his examination.  To establish inconsistency, the ALJ cited to Kande's unremarkable appearance but "drew no connection between Plaintiff's normal gait and her inability to carry objects heavier than 15 pounds."  Kande contends that Dr. Apazidis's opinion "was but one of several opinions in the record that consistently identified lifting and/or carrying restrictions that are consistent with sedentary work."

Dr. Goldmark conducted several orthopedic examinations during the course of Kande's treatment, revealing no limp or antalgic gait, moderate spasms, moderate paraspinal and trapezius tenderness and increased range of motion at all planes of her cervical spine, on May 22,

2014.  However, on March 12, 2015, Dr. Goldmark's examination revealed a cervical spine condition worse than that observed during the May 22, 2014 examination and Dr. Apazidis's February 2014 examination, and Dr. Goldmark noted "marked orthopedic disability" and that Kande must avoid lifting any objects.  On August 27, 2015, Dr. Goldmark opined that Kande should be limited to lifting restrictions of ten pounds.  The ALJ gave "some weight" to Dr. Goldberg's opinion for lack of credible explanation of how Kande went from no limitations in May 2014, to marked disability in March 2015, and moderate disability in August 2015. However, the ALJ 's contention that Dr. Goldberg failed to provide a credible explanation is belied by Dr. Goldberg's and Dr. Apazidis's findings that reveal decreased range of motion at all planes of her cervical spine over time:

| Range of Motion | Normal | Claimant 2/2014 | Claimant 5/2014 | Claimant 3/2015 |
|---|---|---|---|---|
| Flexion | 50 | 30 | 50 | 10 |
| Extension | 60 | 20 | 60 | 15 |
| Right Rotation | 80 | 35 | 80 | 20 |
| Left Rotation | 80 | 35 | 80 | 25 |
| Right Lateral Flexion | 45 | 25 | 45 | 25 |
| Left lateral Flexion | 45 | 25 | 45 | 25 |

On April 17, 2015, Dr. Goldmark supplemented his March 2015 report and explained the discrepancy between his 2014 and 2015 examinations, stating that Kande's condition deteriorated markedly following cervical injections.

Kande contends that the ALJ rejected Dr. Weinstein's May 29, 2014 opinion that she is restricted to a sedentary work position with exertion of forces up to a maximum of ten pounds because Dr. Weinstein did not evaluate Kande and his opinion was inconsistent with Dr. Goldmark's May 2014 opinion that Kande could return to work without restrictions.  The ALJ erred in failing to consider the record as a whole, pointing to one examination note that even Dr. Goldberg identified as inconsistent with Kande's deteriorating condition, to discount the entirety

4

of Dr. Weinstein's opinion despite many other notes and opinions in the record concluding that Kande could not lift the amount of weight contemplated for light work.

Kande asserts that the ALJ also discounted the opinion of treating chiropractor, Bottcher, a non-acceptable medical source whose opinion should be evaluated according to the guidelines, that Kande "should walk no more than ½ block at any time, avoid climbing, bending, stooping, crawling, using heavy equipment and power tools, lift and push no more than 2 to 5 pounds, sit no more than 10 minutes at a time, and avoid repetitive use of her hands and/or wrist and overhead reaching with her right extremity," relying on assessments by neurologist Ranga Krishna, M.D. ("Dr. Krishna") and Maury Harris, M.D. ("Dr. Harris"). Dr. Krishna found that Kande had a normal gait and full motor strength in her upper extremities except for her right bicep but the ALJ "blatantly failed to note" that Dr. Krishna also "observed decreased range of motion at all levels of Plaintiff's upper cervical and lumbar spine." Dr. Harris opined that Kande could work, "but with restrictions including no overhead repetitive activities and lifting of 25 pounds," which the ALJ ignored, relying instead on Dr. Harris's opinion that Kande had a normal gait, full motor strength and normal sensation. The ALJ also relied on Kande's daily activities to reject Bottcher's opinion and noted she was able to dress, bathe, groom and prepare food, do laundry and shop. The ALJ's finding that Kande's daily activities are inconsistent with Bottcher's opinion is not supported by substantial evidence because the ALJ disregarded Kande's qualifications of her ability to perform them: (a) she "estimated that she could walk one half of a block before experiencing pain"; (b) she "needs help showering and dressing, but she is stubborn"; (c) she "last drove one year prior to the hearing but stopped due to pain"; (d) her "medications cause drowsiness"; and (e) she "can prepare basic meals for herself about once per week" so she can have enough food for the week and place it in the freezer.

Kande contends that the ALJ accorded some weight to Dr. Archbald's April 8, 2016, consultative internal medicine examination opinion that she has: (i) mild limitations with walking; (ii) marked  limitations for squatting, bending and activities involving cervical spine flexion looking down and cervical spine extension looking up, lifting and carrying using her right arm; and (iii) moderate limitations for activities involving cervical spine lateral rotation looking to each side, lifting and carrying using her right arm as well as climbing stairs.  The ALJ explained that Dr. Archbald's opinion was based on an in-person examination and "generally supported by the medical evidence as a whole," which "begs the question: what is it about Dr. Archbald's opinion that warranted only some weight?"  Thus, meaningful review of the ALJ's analysis is not possible because the ALJ did not explain what portions of Dr. Archbald's opinion she accorded weight and what portions she did not, or how marked limitations indicated in the opinion informed her analysis regarding any portion of the opinion.  Kande asserts that Dr. Archbald's opinion is supported by her examination findings that are consistent with the objective medical evidence of record, including: (1) an October 2017 magnetic resonance imaging ("MRI") of the cervical spine revealing degenerative disc disease, mild focal disc protrusion at C3-C4, broad based herniation at C5-C6 centrally and to the right of midline which may just touch the spinal cord and a small focal central disc protrusion indenting the thecal sac at C6-C7; and (2) an October 21, 2015 MRI of the lumbar spine revealing a moderate diffuse bulge with thecal sac compression at L2-L3 and L5-S1; (3) an April 14, 2015 x-ray of the cervical spine revealing mild degenerative osteoarthritis; (4) a November 2016 MRI of the left shoulder revealing mild diffuse rotator cuff tendinosis, a small articular-sided tear with the anterior supraspinatus tendon, mild degenerative changes at the acromioclavicular joint, mild impingement, mild subacromanial/subdeltoid bursitis and glenoid labral tears; (5) a June 30,

2017 MRI of the lumbar spine revealing, among other things, lumbar spondylosis; and (6) a November 1, 2017 MRI of the right hip revealing small bilateral trochanteric bursitis and a right anterior acetabular labral tear.  The ALJ ignored every treating or examining opinion in the record that identified a lifting and carrying impairment that would limit Kande to sedentary work, relying instead on the opinion of a non-examining state-agency physician who opined that Kande can perform light work.  The ALJ's failure to accord proper weight to the opinion evidence is harmful because a reduction to sedentary work would result in a finding that Kande was disabled.

Kande asserts that the ALJ accorded significant weight to Dr. Carr's April 8, 2016 "psychiatric evaluation" except that she afforded little weight to the portion of the opinion that Kande has moderate to marked social limitations.  The ALJ's determination was an error because Dr. Carr's opinion is supported by her examination and the record evidence, including: (a) the April 7, 2016 treatment with Edward Fruitman, M.D., who prescribed medication for depression and panic disorder and endorsed anxiety; and (b) the June 28, 2017 treatment with Dr. Eustace Huggins, M.D., who completed a treating physician's wellness plan report noting depressive disorder, panic disorder, bipolar disorder, hypertension, cervical and lumbar disc disease and COPD, as well as the October 26, 2017 wellness plan and November 15, 2017 follow-up for psychotherapy and medical status examination.  The ALJ relied on Kande's testimony that she has no difficulty getting along with people to reject the social limitations identified by Dr. Carr, but she ignored Kande's testimony that she does not belong to any organization or participate in any activities outside her home, lives by herself and watches depressing programs on television without knowing why.  The ALJ's failure to accord proper weight to Dr. Carr's opinion was

harmful because the social limitations identified by Dr. Carr would preclude Kande from performing the jobs identified by the ALJ, each of which involves social contacts.

## DEFENDANT'S CONTENTIONS

The defendant contends that Kande does not challenge the ALJ's findings at step one through three of the sequential analysis, and she failed to show that no reasonable factfinder could have made the same residual functional capacity determination.  The ALJ accorded properly limited weight to the February 2014 opinion of Dr. Apazidis that Kande had a moderate work-related orthopedic disability and was capable of returning to work with no lifting of more than fifteen pounds and Dr. Weinstein's May 2014 opinion that Kande could perform sedentary work "with exertion forces up to a maximum of 10 pounds" because, as noted by the ALJ, they were "couched in workers' compensation terminology" and provided limited utility in assessing Kande's residual functional capacity.  Moreover, they were issued before the adjudicated period and inconsistent with record findings before and during the adjudicated period showing normal appearance, posture and gait, full muscle strength, intact reflexes and intact sensation throughout the extremities.  Dr. Apazidis's finding that Kande could lift up to fifteen pounds is consistent with her ability to perform light work, which involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  The defendant asserts that Kande's argument that Dr. Apazidis's opinion is consistent with sedentary work is incorrect, and "Dr. Weinstein's restriction to ten pounds of lifting is at least partially consistent with a light" residual capacity finding.

The defendant asserts that the ALJ accorded proper weight to Dr. Goldmark's opinion based on the lack of a credible explanation of why Kande went from no limitations in May 2014 to marked disability in March 2015, and then to moderate disability in August 2015.  Although

Dr. Goldberg stated that Kande responded temporarily to cervical injections, the ALJ noted Dr.
Goldberg's consistent conclusions that Kande could return to work, and Dr. Goldmark's
examinations over time showed she had normal appearance, posture, gait and full muscle
strength, which was consistent with the record.  The ALJ also accorded proper weight to
Bottcher's "short opinion in check-off format" because it was inconsistent with the examination
findings and, since Bottcher is a chiropractor, his opinion is not entitled to controlling weight.

The defendant contends that the ALJ accorded properly some weight to Dr. Archbald's
opinion because it was consistent with the medical findings of record.  The ALJ also accorded
proper weight to the opinion of state-agency medical consultant Dr. Eduardo Haim ("Dr. Haim")
that Kande "could occasionally lift and/or carry twenty pounds; could frequently lift and/or carry
ten pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about
six hours in an eight-hour workday; had unlimited pushing and/or pulling ability; and could
occasionally crawl and climb ladders and frequently balance, stoop, kneel, and crouch," because
it was consistent with the record evidence showing that Kande had full muscle strength
throughout the extremities and an intact gait, and was neurologically intact.

The defendant maintains that the ALJ accorded proper weight to Dr. Harris's opinion that
Kande "could return to work with a mild partial orthopedic disability that did not involve
overhead repetitive activities and lifting over twenty-five pounds because it was consistent with
Dr. Harris's own findings and the record evidence."  According to the defendant, the ALJ also
accorded properly little weight to Dr. Carr's opinion that Kande had moderate-to-marked
limitations relating adequately with others because it was inconsistent with the notes by various
providers showing that Kande was cooperative and communicated and related adequately, as
well as with her testimony.

The defendant asserts that the ALJ considered Kande's treatment, including use of medications and their side effects, which Kande denied consistently, and the progress notes indicated that treatment was effective.  Contrary to Kande's contention, the ALJ's residual functional capacity determination is supported by her testimony about the activities of daily living, including visiting family, reading, listening to the radio, speaking to family on the telephone and traveling to Florida for two months during the relevant period.  The ALJ also considered the inconsistent record account of Kande's level of functionality.  For example, Kande testified that she had been using a cane since 2014, but Dr. Archbald observed in 2016 that she did not require any assistive devices and, during the July 2014 emergency room visit for neck pain, a registered nurse observed that Kande was walking without assistance and moving her neck well and lying on the bed using her telephone.  The defendant maintains that the ALJ's residual functional capacity determination is supported by substantial evidence, including treatment records and examination findings of multiple treating providers, as well as Kande's daily activities.  Finally, the ALJ relied properly on the vocational expert's testimony when determining that "sufficient jobs exist that Plaintiff could perform."

## PLAINTIFF'S REPLY

Kande contends that the defendant failed to respond to her arguments and only repeated what the ALJ stated in her decision.  For example, the defendant did not respond to Kande's contention that Dr. Apazidis provided the limitation to lifting objects heavier than 15 pounds and failed to explain how "this functional limitation is 'couched in workers' compensation terminology' such that it lacked any utility." According to Kande, the defendant "cherry picked seemingly benign examination findings showing normal appearance, posture, and gait to suggest that the opinions of the consulting examiners and the treating chiropractor were inconsistent with

the medical evidence."  Although the ALJ is not obligated to reconcile every conflicting shred of medical testimony, the ALJ "cannot simply selectively choose evidence in the record that supports her conclusions," and the defendant "much like the ALJ failed to build any bridge whatsoever that might otherwise explain how Plaintiff's seemingly normal gait has anything to do with her ability to lift and carry in excess of 20 pounds – a limitation that not a single examiner or treating source in the record opined Plaintiff was capable of performing."  Similarly, the defendant, like the ALJ, "turned a blind eye to Dr. Goldmark's examination and his subsequent explanation answering" the question of how Kande went from no limitation in May 2014 to marked disability in March 2015.  The defendant did not offer any reasoning that might explain why Dr. Goldmark's explanation was not credible despite Dr. Goldmark's examination findings.  Kande maintains that the defendant failed to rebut her contention that, after concluding that Dr. Archbald's opinion was entitled to weight, the ALJ failed to incorporate portions of her opinion that were favorable to Kande.

Kande asserts that the defendant points to activities of daily living, such as living alone, caring for personal needs, preparing food, cleaning, doing laundry, shopping, driving, spending time with family, reading and watching television to suggest that she has the functional capacity for light work.  However, like the ALJ, the defendant failed to observe the qualifications Kande placed upon her limited ability to perform these activities.  Although the ALJ has discretion to evaluate Kande's statements, the ALJ "may not penalize Plaintiff for enduring pain so that she may feed, bathe, and provide for her own self-care."  Kande asserts that the defendant's contentions are without merit because she "should not have to isolate from her family and demonstrate that she is an invalid to establish a claim for disability."

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

> A district court may set aside the Commissioner's determination that a claimant is
> not disabled only if the factual findings are not supported by "substantial evidence"
> or if the decision is based on legal error.  Substantial evidence "means such relevant
> evidence as a reasonable mind might accept as adequate to support a conclusion."

Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

The Commissioner's "finding will be sustained if supported by substantial evidence, even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from" the Commissioner's.  Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y. 1992) (citations omitted).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."  Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (internal citations omitted).

To qualify for disability benefits, an individual must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Administration's regulations establish a five-step process for determining a disability claim.  See 20 C.F.R. § 404.1520(a)(4).

If at any step a finding of disability or nondisability can be made, the [Social Security Administration] will not review the claim further.  At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity."  At step two, the [Social Security Administration] will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the [Social Security Administration] assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.  If the claimant survives the fourth stage, the fifth, and final, step requires the [Social Security Administration] to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003) (internal citations omitted).

If "a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is given "controlling weight."  20 C.F.R. § 404.1527(c)(2).  "Regardless of its source, we will evaluate every medical opinion we receive.  "Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."  20 C.F.R. § 404.1527(c)(1).  Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."  20 C.F.R. § 404.1527(c).  "When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical

opinion." 20 C.F.R. § 404.1527(c)(2).  The factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) are

the "[l]ength of the treatment relationship and the frequency of examination" and "[n]ature and

extent of the treatment relationship."  20 C.F.R. § 404.1527(c)(2).  The factors listed in

paragraphs (c)(3) through (c)(6) are evidentiary supportability, consistency of the opinion with

the record as a whole and medical specialization of the treating source.  See 20 C.F.R. §§

404.1527(c)(3)-(c)(6).  "We generally give more weight to the opinion of a specialist about

medical issues related to his or her area of specialty than to the medical opinion of a source who

is not a specialist." 20 C.F.R. § 404.1527(c)(5).  "Although the treating physician rule generally

requires deference to the medical opinion of a claimant's treating physician, the opinion of the

treating physician is not afforded controlling weight where . . . the treating physician issued

opinions that are not consistent with other substantial evidence in the record, such as the opinions

of other medical experts."  Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (citations

omitted).

> Opinions from medical sources who are not acceptable medical sources and from
> nonmedical sources. (1) Consideration. Opinions from medical sources who are not
> acceptable medical sources and from nonmedical sources may reflect the source's
> judgment about some of the same issues addressed in medical opinions from
> acceptable medical sources. Although we will consider these opinions using the
> same factors as listed in paragraph (c)(1) through (c)(6) in this section, not every
> factor for weighing opinion evidence will apply in every case because the
> evaluation of an opinion from a medical source who is not an acceptable medical
> source or from a nonmedical source depends on the particular facts in each case.
> Depending on the particular facts in a case, and after applying the factors for
> weighing opinion evidence, an opinion from a medical source who is not an
> acceptable medical source or from a nonmedical source may outweigh the medical
> opinion of an acceptable medical source, including the medical opinion of a treating
> source. For example, it may be appropriate to give more weight to the opinion of a
> medical source who is not an acceptable medical source if he or she has seen the
> individual more often than the treating source, has provided better supporting
> evidence and a better explanation for the opinion, and the opinion is more consistent
> with the evidence as a whole. (2) Articulation. The adjudicator generally should
> explain the weight given to opinions from these sources or otherwise ensure that
> the discussion of the evidence in the determination or decision allows a claimant or

14

subsequent reviewer to follow the adjudicator's reasoning, when such opinions may
have an effect on the outcome of the case. In addition, when an adjudicator
determines that an opinion from such a source is entitled to greater weight than a
medical opinion from a treating source, the adjudicator must explain the reasons in
the notice of decision in hearing cases and in the notice of determination (that is, in
the personalized disability notice) at the initial and reconsideration levels, if the
determination is less than fully favorable.

20 C.F.R. § 404.1527(f).

"The applicant bears the burden of proof in the first four steps of the sequential inquiry; the

Commissioner bears the burden in the last."  Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir.

2012).

## APPLICATION OF LEGAL STANDARD

### Dr. Apazidis

On May 4, 2017, Dr. Haim completed a Physical Residual Functional Capacity

Assessment form for the period "6/6/2014 to present."  The form directed Dr. Haim, for each

section A through F,  to: (1) "[b]ase your conclusion on **all evidence** in file (clinical and

laboratory findings; symptoms; observations, lay evidence; reports of daily activities; etc.)"; (2)

"[c]heck the blocks which reflect your **reasoned judgment**"; (3) "[d]escribe how the evidence

**substantiates your conclusions** (cite specific clinical and laboratory findings, observations, lay

evidence, etc.)"; (4) "[e]nsure that you have: [i] [r]equested appropriate medical source

statements regarding the individual's capacities" and "that you have given appropriate **weight to**

**treating source conclusions**," [ii] "[c]onsidered and responded to **any alleged limitations**

**imposed by symptoms** (pain, fatigue, etc.) attributable in your judgment to a medically

determinable impairment.  Discuss your assessment of symptoms-related limitations in the

explanation for your conclusions in A-F below" and [iii] "[r]esponded to all allegations of

physical limitations or factors which can cause physical limitations"; and (5) consider that

"**Frequently** means occurring one-third to two-thirds of an 8-hour workday (cumulative, not continuous).  **Occasionally** means occurring from very little up to one-third of an 8-hour workday (cumulative, not continuous)."  Dr. Haim did not "[d]escribe how the evidence **substantiates your conclusions** (cite specific clinical and laboratory findings, observations, lay evidence, etc.)" for sections A (Exertional Limitations) and B (Postural Limitations), where he marked the presence of certain limitations.

The ALJ rejected Dr. Apazidis's opinion that Kande "had a moderate causally related orthopedic disability and was capable of returning to work with restrictions to lifting no more than 15 pounds" because it was "couched in worker's compensation terminology [and] provides limited utility in assessing the claimant's residual functional capacity."  The ALJ did not explain the meaning of the phrase "couched in worker's compensation terminology" or how Dr. Apazidis's opinion that Kande "was capable of returning to work with restrictions to lifting no more than 15 pounds" "provides limited utility in assessing the claimant's residual functional capacity."  The ALJ did not find that the Physical Residual Functional Capacity Assessment of Dr. Haim, on which she relied and to which she accorded significant weight, including that Kande can lift 20 pounds occasionally and ten pounds frequently, "provides limited utility in assessing the claimant's residual functional capacity," notwithstanding the facts that Dr. Haim: (i) did not examine Kande; and (ii) failed to "[d]escribe how the evidence **substantiates your conclusions**" by citing "specific clinical laboratory findings, observations, lay evidence, etc.," as directed by the Physical Residual Functional Capacity Assessment form in which Dr. Haim checked the blocks indicating Kande's limitations, including exertional limitations.  The ALJ did not explain the basis for treating differently Dr. Apazidis's opinion on Kande's ability to lift based on examination and Dr. Haim's non-examining opinion on Kande's ability to lift that is

not supported by an explanation or reference to any evidence, other than asserting that Dr. Apazidis's opinion was "couched in worker's compensation terminology." The defendant did not point to any evidence in the record supporting Dr. Haim's finding that Kande can "lift and/or carry" 20 pounds occasionally. Although the ALJ accorded significant weight to Dr. Haim's opinion because it was consistent with Dr. Harris's opinion, in which Dr. Harris indicated, as the ALJ noted, that Kande "could work without any repetitive overhead activities or lifting over 25 pounds," no medical source opined that Kande was limited to lifting and/or carrying 20 pounds. Dr. Haim did not explain the basis for marking Kande's limitation to lifting and/or carrying 20 pounds occasionally; thus, Dr. Haim's opinion that Kande can "lift and/or carry 20 pounds occasionally is unsupported by evidence and arbitrary. The ALJ erred when she assigned significant weight to Dr. Haim's non-examining and unsupported opinion that Kande can "lift and/or carry" 20 pounds occasionally, while rejecting Dr. Apazidis's opinion based on examination that Kande was limited "to lifting no more than 15 pounds." See 20 C.F.R. § 404.1527(c)(1). The ALJ's rejection of Dr. Apazidis's opinion that Kande "was capable of returning to work with restrictions to lifting no more than 15 pounds," based on the ALJ's unexplained contention that it was "couched in worker's compensation terminology [and] provides limited utility in assessing the claimant's residual functional capacity," is arbitrary, capricious and erroneous.

The ALJ accorded "limited weight" to Dr. Apazidis's opinion stating it is "supported by the record to the extent that it reflects that the claimant retained the capacity to work at the light exertional level," based on Dr. Apazidis's finding that Kande "had normal appearance, posture, and gait with full motor strength." The ALJ did not explain how Dr. Apazidis's finding that Kande "had normal appearance, posture, and gait with full motor strength" is inconsistent with

Dr. Apazidis's finding that Kande "was capable of returning to work with restrictions to lifting no more than 15 pounds."  To the extent the ALJ rejected Dr. Apazidis' finding of Kande's restricted ability to lift as inconsistent with Dr. Apazidis's finding that Kande "had normal appearance, posture, and gait with full motor strength," which was consistent with the record, the ALJ failed to reconcile those findings or provide any reasonable basis for rejecting one finding while accepting the other.  See Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) (Although it is not required "that, in rejecting a claim of disability, an ALJ must reconcile explicitly every conflicting shred of medical testimony," courts "cannot accept an unreasonable rejection of all the medical evidence in a claimant's favor.") (citation omitted).  The defendant's assertion that Dr. Apazidis's finding that Kande could lift up to fifteen pounds is consistent with her ability to perform light work, which involves lifting "no more than 20 pounds at a time" is meritless. Other than generally repeating the ALJ's findings and asserting they were proper, the defendant failed to rebut Kande's arguments.  Thus, rejecting Dr. Apazidis's opinion that Kande was limited to lifting no more than 15 pounds without good reason was improper.

### Dr. Weinstein

Similarly to rejecting Dr. Apazidis's opinion that Kande was limited to lifting no more than 15 pounds, the ALJ rejected Dr. Weinstein's opinion that Kande "was restricted to sedentary work with exertion up to a maximum of 10 pounds" on the same basis, namely, because it was "couched in worker's compensation terminology [and] provides limited utility in assessing the claimant's residual functional capacity."  As discussed above, the ALJ did not explain the meaning of the phrase "couched in worker's compensation terminology" or how that opinion "provides limited utility in assessing the claimant's residual functional capacity."  Thus,

rejecting Dr. Weinstein's opinion that Kande "was restricted to sedentary work with exertion up to a maximum of 10 pounds" on that basis was arbitrary, capricious and erroneous.

The ALJ also rejected Dr. Weinstein's opinion because it was not based on examination and was "completely inconsistent with Dr. Goldmark's May 2014 opinion" that Kande had no limitations, to which the ALJ accorded "some weight."  The ALJ rejected Dr. Goldmark's March 2015 opinion that Kande was limited to "no lifting" and August 2015 opinion that Kande was limited "to lifting no more than 10 pounds," because Dr. Goldmark provided " no credible explanation" about why Kande "went from no limitations in May 2014 to marked disability in March 2015 and moderate disability in August 2015."  However, Dr. Goldmark's examination findings from May 2014 and March 2015 reveal decreased range of motion at all planes of her cervical spine and Dr. Goldmark's April 17, 2015 supplemental report explained that the discrepancy between his May 2014 examination and March 2015 examination was owed to marked deterioration following cervical injections.  The ALJ did not explain the basis for determining that Dr. Goldmark's examination findings and supplemental report are not credible. Having failed to explain the basis for finding incredible Dr. Goldmark's explanation for the discrepancy between Dr. Goldmark's May 2014 and March 2015 findings, the ALJ also failed to provide good reason for rejecting the May 2015 finding, while accepting the May 2014 finding. Thus, rejecting Dr. Weinstein's opinion because it was "completely inconsistent with Dr. Goldmark's May 2014 opinion, which was given "some weight," without good reason, was improper.

*Chiropractor Bottcher*

The ALJ rejected Bottcher's November 6, 2015 opinion because: (1) no evidence supporting extreme limitations on sitting, walking, lifting and pushing existed; (2) November and

December 2015 treating records indicate a normal gait and full motor strength throughout

Kande's upper extremities, except for the right bicep, referencing Dr. Krishna's November 5,

2015 findings ,"Exhibit 12F at 2-3," and Dr. Harris's December 4, 2015 findings, "Exhibit 15F at

4-5"; and (3) it was not consistent with Kande's "reported activities of daily living in early 2016,

which included dressing, bathing, and grooming herself, preparing food, cleaning, doing laundry,

and shopping (Exhibit 16F at 3; Exhibit 17F at 2)."  The defendant asserts that the ALJ accorded

properly very little weight to Bottcher's "short opinion in check-off format" that was inconsistent

with the examination findings, showing Kande had normal appearance, posture and gait with full

muscle strength, intact reflexes and intact sensation throughout the extremities.  The defendant

did not explain the relevance of the fact that Bottcher's short opinion was in "check-off format,"

given that a similar short "check-off" format was used by Dr. Haim, whose opinion was

accorded significant weight by the ALJ.  Although Kande's treating physician Dr. Krishna noted,

on November 5, 2015, that Kande had "a normal gait," Dr. Krishna also observed decreased

range of motion at all levels of Kande's cervical and lumbosacral spine and noted muscle spasms

"in the cervical upper trapezius and lumbosacral paraspinal muscle," "[a] tender to palpate along

the right shoulder," which the ALJ failed to address.  The ALJ rejected Dr. Krishna's opinions,

giving them "very little weight" because: (1) they "do not indicate the nature and degree of the

claimant's limitations"; (2) "Dr. Krishna's findings of normal gait and intact sensation and motor

strength do not support her conclusions"; and (3) they "are also not consistent with the

claimant's reported activities of daily living."  Having rejected Dr. Krishna's opinions because

they "do not indicate the nature and degree of the claimant's limitations," the ALJ then used "Dr.

Krishna's findings of a normal gait and intact sensation and motor strength to reject Bottcher's

opinion, without explaining why she credited those findings, despite the fact that they "do not

indicate the nature and degree of the claimant's limitations," and not the findings of decreased

range of motion at all levels of Kande's cervical and lumbosacral spine and noting muscle

spasms "in the cervical upper trapezius and lumbosacral paraspinal muscle" and "[a] tender to

palpate along the right shoulder."  Selectively relying on parts of the treating physician opinions

rejected because they "do not indicate the nature and degree of the claimant's limitations," while

ignoring other parts of the same rejected opinions, without any explanation for the different

weight given to those parts, is arbitrary and not a good reason to reject Bottcher's opinion.

Similarly, while Dr. Harris, whose opinion was accorded significant weight, noted "normal gait,

full motor strength, and normal sensation," the ALJ ignored, without explaining, Dr. Harris's

finding that Kande was restricted to "no overhead repetitive activities and lifting of 25 lbs."

Moreover, Bottcher's findings were supported by his examination that revealed muscle spasms

in Kande's cervical and lumbar spine and radiating pain with numbness and tingling, in

November 2015 and muscle spasms in December 2015.  The Court finds that the ALJ did not

give good reason for rejecting Bottcher's opinion and her reliance on the rejected opinion of the

treating physician to reject Botcher's opinion was arbitrary and improper.

***Dr. Archbald***

The ALJ gave "some weight" to Dr. Archbald's opinion because: (i) Dr. Archbald

examined Kande; and (ii) it was "generally supported by the medical evidence as a whole."  The

ALJ did not explain why she gave only "some weight" to Dr. Archbald's opinion and what

portions of the opinions she accepted or rejected.  The ALJ's failure to identify portions of Dr.

Archbald's opinion on which she relied and those she rejected is erroneous, especially in light of

Dr. Archbald's findings that Kande had marked limitation in lifting and carrying with  the right

arm and moderate limitation in lifting and carrying with the left arm, which is consistent with

opinions of other examiners who placed Kande at or below the ability to perform sedentary work which involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." See 20 C.F.R. § 404.1567(a).  As Dr. Archbald's opinion is consistent with her examination findings and the objective medical evidence in the record, including MRIs of Kande's cervical and lumbar spines and left shoulder, and the ALJ indicated it was based on examination and supported by medical evidence as a whole, the ALJ erred in failing to provide good reason and explanation for the weight given.

**Dr. Carr**

The ALJ gave "little weight" to Dr. Carr's finding of "moderate to marked limitation relating with others" because it was based "entirely" on Kande's allegations of her symptoms and she "testified at the hearing that she has no difficulties getting along with others," while giving significant weight to the rest of the opinion.  The ALJ determined that Kande's statements concerning the intensity, persistence and limiting effects of the alleged symptoms are not entirely consistent with the medical and other evidence in the record.  The ALJ found that Kande described her activities that are not limited to the extent one would expect given her complaints of disabling symptoms and limitations, including during the April 2016 consultative examinations and, at the hearing, where she testified that "while it takes her some time, she is able to cook, clean, and do laundry."  Kande acknowledges that she testified at the hearing that she does not have difficulties getting along with other people, but argues that other testimony at the hearing reveals the extent of her social limitations, such as that she does not belong to any organizations, does not participate in any activities outside her home or lives alone.  Kande did not explain the relevance, if any, of the lack of her membership in any organizations or participation in any activities outside her home or living alone to her testimony that she has no

difficulty getting alone with other people.  The ALJ explained properly the reasoning and made citation to evidence on which she relied in determining Kande's credibility.  As the ALJ's credibility determination was supported by substantial evidence, the ALJ explained and gave good reason for rejecting that portion of Dr. Carr's opinion that was based entirely on Kande's allegations of her symptoms and she "testified at the hearing that she has no difficulties getting along with others."  The ALJ provided good reason for and gave proper weight to Dr. Carr's opinion, including "little weight" she accorded to Dr. Carr's finding of "moderate to marked limitation relating with others."

## CONCLUSION

For the foregoing reasons, the Court finds that the ALJ erred in weighing medical opinions, and the ALJ's residual functional capacity determination is not supported by substantial evidence.  The plaintiff's motion for judgment on the pleadings, Docket Entry No. 13, is granted and the matter remanded to the Commissioner for further proceedings, and the defendant's motion for judgment on the pleadings, Docket Entry No. 15, is denied.

Dated: New York, New York
        July 9, 2020

SO ORDERED:

_Kevin Nathaniel Fox_
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

23